IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVA WILLIAMS, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | CIVIL ACTION NO: |
| ) | 1:06-CV-387-CSC |
| GREATER GEORGIA LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| DEFENDANT. ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** defendant, Greater Georgia Life Insurance Company ("GGL"), and submits the following brief in support of its motion for summary judgment.

## I. INTRODUCTION

Plaintiff in this case has filed a ERISA suit against GGL for what she claims was an improper denial of Short Term Disability ("STD") benefits. Specifically, plaintiff claims that osteoarthritis in her lower leg rendered her "totally disabled" and unable to perform her job, and that GGL therefore should have paid her disability benefits. However, the undisputed evidence shows that plaintiff's claim for benefits was initially denied because plaintiff, at the time, had not even been evaluated in person by a physician. Therefore, she was not "under the regular care

1517553

and attendance of a physician" as required by the Plan.  Plaintiff's benefits claim was subsequently denied because the medical records submitted to GGL provided no evidence whatsoever that plaintiff was "totally disabled."  As more fully demonstrated below, the undisputed evidence proves that GGL properly denied plaintiff's claim for STD benefits based on the information it had at the time it made the decision, and that summary judgment in its favor is therefore due to be granted.

## II.   UNDISPUTED FACTS

**A.   The Plan**

1.   At all times relevant to this case, GGL was the Claims Administrator and Claims Fiduciary for West Point Homes, Inc.'s ("West Point") Short Term Disability Plan ("the Plan").  (Woods Decl. ¶ 3;[1] The Plan, p. 10, ¶ 4;).[2]

2.   As Claims Administrator and Claims Fiduciary, GGL received, processed and paid claims for Short Term Disability ("STD") benefits made by employees of West Point.  (Woods Decl. ¶ 4).

---

[1]   Declaration of Kristie Woods is attached as Ex. 1 to GGL's Evidentiary Submission.  Please note that defense counsel has redacted personal information within this exhibit and certain other exhibits to protect the privacy of the plaintiff.

[2]   West Point Homes, Inc.'s Short Term Disability Plan is attached as Ex. 2 to GGL's Evidentiary Submission.

3. GGL agreed to pay STD benefits only if an insured West Point employee became "totally disabled" because of an illness or injury. (Woods Decl. ¶ 5; Group Ins. Policy, pp. 4-10).[3]

4. The Plan defined "totally disabled" as follows:

> "Totally Disabled" or "Total Disability" means that you: (1) are unable, due to a disability (whether Illness or Injury), to perform all of the duties of your regular occupation, supported by objective medical evidence; (2) are under the regular care and attendance of a physician, appropriate for the condition causing the disability; and (3) are not otherwise employed for wage or profit.

(The Plan, p. 3, ¶ 6).

5. GGL's consistent policy and practice under the Plan's definition of "totally disabled" was to require an individual claiming to be totally disabled to actually see a physician; in other words, the physician must actually evaluate the individual in person. (Woods Decl. ¶ 16).

6. GGL retained "discretionary authority to determine [an individual's] entitlement to Plan benefits for each claim received and to construe the terms of the Plan." (The Plan, p. 9, ¶ 5).

---

[3] The Group Insurance Policy is attached as Ex. 3 to GGL's Evidentiary Submission.

B.     **Plaintiff And Her Medical History**

7.     Plaintiff worked at West Point's textile manufacturing facility in West Point, Georgia. (Woods Decl. ¶ 7; See Employment Record).[4]

8.     In December 2004, plaintiff had hip replacement surgery, and took a leave of absence from work until approximately June 2005. (12/14/04 Dr. Dehaven Operative Report;[5] 2004-2005 Doctor's Excuses).[6]

9.     Plaintiff's surgery and recovery went well. (01/11/05 & 02/03/05 Dr. Dehaven Records;[7] 03/17/05 Dr. Dehaven Record).[8]

10.    In March 2005, Dr. James Dehaven, plaintiff's treating physician, noted that plaintiff was "doing very well," and that it "would just be a matter of time for her to get better." (03/17/05 Dr. Dehaven Record). Dr. Dehaven stated that plaintiff, as of March 2005, "want[ed] to stay out another couple of months because that is the length of her disability program…." (03/17/05 Dr. Dehaven Record).

---

[4]    West Point Employment Record is attached as Ex. 4 to GGL's Evidentiary Submission.

[5]    12/14/04 Operative Report is attached as Ex. 5 to GGL's Evidentiary Submission.

[6]    Southern Bone & Joint Specialists, P.C. Excuses dated 12/30/04, 03/17/05, 05/03/05 & 07/25/05 are attached as Ex. 6 to GGL's Evidentiary Submission.

[7]    Dr. Dehaven Medical Records dated 01/11/05 & 02/03/05 are attached as Ex. 7 to GGL's Evidentiary Submission.

[8]    Dr. Dehaven Medical Record dated 03/17/05 is attached as Ex. 8 to GGL's Evidentiary Submission.

11. In June 2005, plaintiff returned to work for approximately six weeks. (Leave of Absence Report).[9]

C. **Plaintiff's Claim For Benefits**

12. Plaintiff took another leave of absence in July 2005, and on July 29, 2005, she submitted a claim with GGL for Short Term Disability (STD) benefits, alleging that osteoarthritis in her lower leg rendered her "totally disabled." (Woods Decl. ¶ 8; Leave of Absence Report; 11/29/05 Letter, p. 2, ¶ 1).[10] This claim was made telephonically. (Woods Decl. ¶ 8).

13. After plaintiff submitted her claim, GGL mailed her a package which contained, among other things, an authorization for release of medical information and a subrogation form. (Woods Decl. ¶ 9).

14. On August 1, 2005, GGL faxed plaintiff's doctor, Dr. Dehaven, a request for medical records. (Woods Decl. ¶ 10).

15. On August 3, 2005, GGL received an off-work note but no medical records from Dr. Dehaven's office. (Woods Decl. ¶ 11).

16. GGL followed up with Dr. Dehaven's office to determine if plaintiff had actually had a visit with the doctor; Dr. Dehaven's office confirmed by fax that plaintiff had merely called in for an extended leave through December 2005, had

---

[9] Leave of Absence Report is attached as Ex. 9 to GGL's Evidentiary Submission.

[10] 11/29/05 Letter from Greater Georgia Life to Eva Williams is attached as Ex. 10 to GGL's Evidentiary Submission.

not been seen by Dr. Dehaven, and had not received any treatment or care. (Woods Decl. ¶ 12; 11/29/05 Letter, p. 2, ¶¶ 2-3; 08/05/05 Letter, p. 1, ¶ 3).[11]

17. GGL followed up with plaintiff by telephone on August 3 and 4, 2005. (Woods Decl. ¶ 13; 11/29/05 Letter, p. 2, ¶ 2). Plaintiff told GGL that she had not been seen by a physician, and that Dr. Dehaven had informed her that she did not need to come in for an appointment. (Woods Decl. ¶ 13; 11/29/05 Letter, p. 2, ¶ 2).

18. During this telephone call, GGL informed plaintiff that medical documentation indicating that she was seen by a physician was needed to support her request for disability benefits. (Woods Decl. ¶ 14; 11/29/05 Letter, p. 2, ¶ 2).

**D.    Initial Denial Of Benefits**

19. At this time, because plaintiff had not been seen by a physician, GGL denied plaintiff's claim for STD benefits. (Woods Decl. ¶ 15; 11/29/05 Letter, p. 2, ¶¶ 2-3; 08/05/05 Letter). This denial was reviewed and approved by Alicia E. Scott, RN, BSN, Disability Case Manager. (Woods Decl. ¶ 15).

20. GGL informed plaintiff that she had the right to appeal that decision and that GGL would be glad to re-open her claim when the necessary information was submitted for review. (Woods Decl. ¶ 17; 08/05/05 Letter, p. 1, ¶ 5).

---

[11]    08/05/05 Letter from Greater Georgia Life to Eva Williams is attached as Ex. 11 to GGL's Evidentiary Submission.

21. On August 10, 2005, GGL returned plaintiff's call and again advised her that her claim had been denied and that the medical records did not support her claim. (Woods Decl. ¶ 18). Plaintiff stated that she was still having problems, and was unsure why her benefits were cutoff. (Woods Decl. ¶ 18). GGL advised plaintiff that the denial letter would outline her right to appeal the decision. (Woods Decl. ¶ 18).

22. On August 16, 2005, plaintiff contacted GGL and requested another copy of the denial letter. (Woods Decl. ¶ 19). Another copy was mailed to plaintiff via certified mail. (Woods Decl. ¶ 19).

23. On August 22, 2005, plaintiff contacted GGL again and requested that it contact Dr. Dehaven's office to obtain medical records to reconsider her claim. (Woods Decl. ¶ 20). The Disability Case Manager at GGL agreed to do so. (Woods Decl. ¶ 20). A message was left at Dr. Dehaven's office to fax medical notes to GGL. (Woods Decl. ¶ 20).

24. On August 24, 2005, medical notes were faxed from Southern Bone and Joint Specialist, P.C. (Dr. Dehaven's office) to GGL. (Woods Decl. ¶ 21).

25. On August 24, 2005, GGL again advised Ms. Williams that it was unable to approve her STD based on the medical records received due to the fact that she had received no treatment during the time she stopped working, and

because the records did not support disability. (Woods Decl. ¶ 22). GGL advised Ms. Williams that she would need to file a letter of appeal. (Woods Decl. ¶ 22).

26.  On August 24, 2005, GGL transmitted this information to plaintiff's employer as well via e-mail. (Woods Decl. ¶ 23).

**E.   Plaintiff's Unsuccessful Appeal**

27.  On October 27, 2005, GGL received plaintiff's request for review of her denial of benefits. (Woods Decl. ¶ 24; 11/28/05 Letter, p. 2, ¶ 4; 10/28/05 Letter, p. 1, ¶ 1).[12]

28.  In accordance with its appeal procedures, GGL requested medical records from plaintiff's physicians, including Dr. Dehaven. (Woods Decl. ¶ 25; 11/28/05 Letter, pp. 2-3).

29.  GGL received the requested medical records on November 9, 2005. (Woods Decl. ¶ 26).

30.  The records indicated that plaintiff was seen by Dr. Dehaven on August 9, 2005, and that he noted that she was "doing okay." (08/09/05 Dr. Dehaven Record).[13] Dr. Dehaven further indicated that "pain wise, she is getting a lot better." (08/09/05 Dr. Dehaven Record).

---

[12]  10/28/05 Letter from Greater Georgia Life to Eva Williams is attached as Ex. 12 to GGL's Evidentiary Submission.

[13]  Dr. Dehaven Medical Records dated 08/09/05 & 09/21/05 are attached as Ex. 13 to GGL's Evidentiary Submission.

31.  Dr. Dehaven's notes from September 21, 2005 indicated that plaintiff "has some arthritis, but not all that bad," and that plaintiff's hip looked "perfect." (09/21/05 Dr. Dehaven Record; see also 12/09/05 Dr. Dehaven Record).[14]

32.  The medical records did not reveal any functional limitations or objective findings that plaintiff was unable to perform her job duties.  (See 01/11/05 Dr. Dehaven Record; 02/03/05 Dr. Dehaven Record; 03/17/05 Dr. Dehaven Record; 08/09/05 Dr. Dehaven Record; 09/21/05 Dr. Dehaven Record; 12/09/05 Dr. Dehaven Record).

33.  GGL determined that plaintiff was not "totally disabled" as defined in the Plan, and consequently upheld the initial denial of plaintiff's claim for STD benefits.  (Woods Decl. ¶ 27; 11/29/05 Letter, p. 1, ¶ 3 & p. 3).

34.  No medical judgment was involved in the denial of plaintiff's claim, as the claim was initially denied because plaintiff had not seen a physician, and subsequently denied because there was no medical information to support a finding of total disability.  (Woods Decl. ¶ 28).

35.  GGL advised plaintiff that she had the right to file suit under ERISA Section 502(a)(1)(B).  (11/29/05 Letter, p. 3, ¶ 3; 04/04/06 Letter, p. 1, ¶ 2).[15]

---

[14] Dr. Dehaven Medical Record dated 12/09/05 is attached as Ex. 14 to GGL's Evidentiary Submission.

[15] 04/04/06 Letter from Greater Georgia Life to Eva Williams is attached as Ex. 15 to GGL's Evidentiary Submission.

36.     Plaintiff has now sued GGL, seeking $5,980.00 in STD benefits. (Woods Decl. ¶ 29; See also Compl. at prayer).

### III.   LEGAL ANALYSIS

#### A.   Summary Judgment Standard

Summary judgment is proper under Fed. R. Civ. P. 56 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249. Further, mere conclusory opinions will not defeat a properly supported motion for summary judgment, and inferences based upon speculation and conjecture will not suffice to create a question of material fact. Blackston v. Shook & Fletcher Insulation Co., 764 F. 2d 1480 (11th Cir. 1985).

#### B.   The Eleventh Circuit's Step-by-Step Analysis For ERISA Suits Alleging Denial Of Benefits

In ERISA cases such as this one, courts in the Eleventh Circuit follow a detailed, step-by-step analysis to determine whether a plaintiff can survive summary judgment. See Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d

1227, 1231-32 (11th Cir. 2006); HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 993-95 (11th Cir. 2001). "'At each step, the court makes a determination that results in either the progression to the next step or the end of the inquiry.'" Tippitt, 457 F.3d at 1232, quoting HCA Health Servs., 240 F.3d at 993.

First, a court must determine which standard to apply in reviewing the claims administrator's decision. Tippitt, 457 F.3d at 1232 (citing Hunt v. Hawthorne Assocs., Inc., 119 F.3d 888, 912 (11th Cir. 1997)). To choose the appropriate standard, the court must examine the plan documents and determine whether they grant the administrator discretion to interpret disputed terms. Id. "'If the court finds that the documents grant the claims administrator discretion, then at a minimum, the court applies arbitrary and capricious review and possibly heightened arbitrary and capricious review' and proceeds to the second step." Id., quoting HCA Health Servs., 240 F.3d at 993; Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1450-51 (11th Cir. 1997).

At step two, the court reviews the claims administrator's interpretation of the plan to determine whether the decision is "wrong." Tippitt, 457 F.3d at 1232. The term "wrong" is used to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms, the court disagrees with the claims administrator's plan interpretation. Id. The function of the court at this step

is simply to determine "whether there was a reasonable basis for the decision, based upon the facts known to the administrator at the time the decision was made." Morse LLC v. Beckman Coulter, Inc., No. 05-22791-CIV, 2006 WL 2883252, at *2 (S.D. Fla. Sep. 25, 2006); Paramore, 129 F.3d at 1451 ("[T]he administrator's fact-based determinations will not be disturbed if reasonable based on the information known to the administrator at the time the decision was rendered."). If the court finds that the administrator's interpretation is correct, the inquiry is over. Tippitt, 457 F.3d at 1232. Only if the court considers the interpretation "wrong" does it proceed to step three. Id.

Next, at step three, the court decides whether the plaintiff, for his part, has proposed an alternative "reasonable interpretation of the plan." Id. If the plaintiff has done so, then the court continues on to step four. Id. If not, then the court's inquiry is ended. Id.

At step four, the court must "'determine whether the claims administrator's wrong interpretation is nonetheless reasonable.'" Tippitt, 457 F.3d at 1232, quoting HCA Health Servs., 240 F.3d at 994. If it is reasonable, then the "'interpretation is entitled to deference even though the claimant's interpretation is also reasonable,'" and the court continues to step five. Id.

Finally, at step five, the court considers the self-interest of the administrator. Tippitt, 457 F.3d at 1232. "'If no conflict of interest exists, then only arbitrary and

capricious review applies and the claims administrator's wrong but reasonable decision will not be found arbitrary and capricious,'" thus ending the inquiry. Id., quoting HCA Health Servs., 240 F.3d at 994. If a conflict does exist, the court will apply "heightened arbitrary and capricious review," and "the burden shifts to the claims administrator to prove that its interpretation of the plan is not tainted by self-interest." Id. The claims administrator must show that "'its wrong but reasonable interpretation of the plan benefits the class of participants and beneficiaries.'" Id., quoting HCA Health Servs., 240 F.3d at 994-95.

C. **Step One -- GGL Retained Discretion To Interpret Disputed Terms, And The Heightened "Arbitrary And Capricious" Standard Therefore Applies**

Applying step one of the analysis to the facts in this case, it is clear that GGL reserved the right to exercise discretion and interpret disputed terms. The Plan unambiguously states that GGL retains "discretionary authority to determine [an individual's] entitlement to Plan benefits for each claim received and to construe the terms of the Plan." (The Plan, p. 9, ¶ 5). Therefore, this Court must apply the heightened arbitrary and capricious standard. See Grayer v. Liberty Life Assurance Co. of Boston, 144 Fed. Appx. 760, 761 (11th Cir. 2006) (citing HCA Health Servs., 240 F.3d at 993).

**D.     Step Two -- Applying The Heightened Arbitrary And Capricious Standard, GGL Was Not "Wrong"**

The undisputed evidence shows that GGL reasonably and correctly interpreted the Plan based on the information before it at the time, and that GGL's decision to deny plaintiff benefits was not "wrong."  Therefore, plaintiff's claim fails at step two of the analysis.

First, GGL reasonably and correctly denied plaintiff's initial claim for STD benefits because plaintiff was not even under the care and attendance of a physician as required by the Plan.  The Plan explicitly states that an individual "must be under the regular care and attendance of a physician, appropriate for the condition causing disability" in order to be entitled to benefits.  (The Plan, p. 3, ¶ 6).  It was the standard policy and practice of GGL to require an in-person evaluation by a physician.  (Woods Decl. ¶ 16).  After making her claim for benefits, plaintiff herself informed GGL that she had not been seen by a physician.  (Woods Decl. ¶ 12; 11/29/05 Letter, p. 2, ¶¶ 2-3; 08/05/05 Letter, p. 1, ¶ 3).  Accordingly, plaintiff did not meet this requirement of the Plan, and cannot show that GGL's initial decision to deny her benefits was "wrong."

Further, it is clear that GGL reasonably and correctly denied plaintiff's appeal.  The medical records that GGL reviewed on appeal indicated that Dr. Dehaven thought that plaintiff was "doing okay," and that "pain wise, she [wa]s getting a lot better."  (08/09/05 Dr. Dehaven Record).  The records further

indicated that although plaintiff had some arthritis, it was "not all that bad," and that plaintiff's hip looked "perfect." (09/21/05 Dr. Dehaven Record; 12/09/05 Dr. Dehaven Record). There was no evidence of any functional limitations, nor any objective findings that plaintiff was unable to perform her job duties. (See 01/11/05 Dr. Dehaven Record; 02/03/05 Dr. Dehaven Record; 03/17/05 Dr. Dehaven Record; 08/09/05 Dr. Dehaven Record; 09/21/05 Dr. Dehaven Record, 12/09/05 Dr. Dehaven Record; see also 11/29/05 Letter, pp. 2-3). Thus, based on the information it had at the time, GGL reasonably and correctly determined that plaintiff was not "totally disabled" as defined in the Plan.

Courts in this Circuit routinely enter summary judgment against a plaintiff in circumstances such as this where there is simply no medical evidence (*i.e.* no objective findings) of a "total disability." See, e.g., Grayer, 144 Fed. Appx. at 761; Stockton v. Kraft Foods Global, Inc., No. 8:05cv2387, 2006 WL 3125877 (M.D. Fla. Oct. 31, 2006); Archible v. Metropolitan Life Ins. Co., 85 F. Supp. 2d 1203 (S.D. Ala. 2000); Daniels v. Hartford Life & Accident Ins. Co., 898 F. Supp. 909, 912 (N.D. Ga. 1995). Summary judgment should be entered here because GGL had no evidence before it to indicate that plaintiff was "totally disabled."[16]

---

[16] Further, even if the Court were to draw slightly different conclusions than GGL, GGL's decision should not be overturned. See Morse, 2006 WL 2883252, at *6 ("The arbitrary and capricious standard of review does not authorize [a] Court to play 'Monday morning quarterback,'" and "a claims administrator's decision should not be overturned merely because the plaintiff or a court may disagree with the decision."); Daniels, 898 F. Supp. at 912 (N.D. Ga.

### E. Step Three -- Plaintiff Can Offer No Reasonable Alternative Interpretation Of The Plan

Because there was no medical evidence indicating a "total disability" -- and because GGL was therefore not "wrong" in denying plaintiff's claim for benefits -- the Court need not proceed any further in the analysis, and summary judgment should be entered.  Mordecai v. Standard Ins. Co., 157 Fed. Appx. 99, 101-02 (11th Cir. 2005); Grayer, 144 Fed. Appx. at 761; Ecklund v. Continental Cas. Co., 415 F. Supp. 2d 1353, 1369 (N.D. Ala. 2005) (stating the "fundamental" rule that if the fiduciary's interpretation is not "wrong," the inquiry should end and summary judgment in favor of the defendant should be entered).  However, even assuming that GGL were somehow "wrong" to deny plaintiff STD benefits, which it was not, plaintiff cannot get past the third step of the analysis.  This is so because plaintiff can point to no reasonable, alternative interpretation of the Plan.

First, with respect to GGL's initial denial of plaintiff's claim, plaintiff admitted to GGL that she had not seen a physician.  (Woods Decl. ¶ 13; 11/29/05 Letter, p. 2, ¶ 2).  Given the clear language of the Plan, which states that an individual "must be under the regular care and attendance of a physician, appropriate for the condition causing disability" in order to be entitled to benefits,

---

1995) ("[T]he court is to determine whether, given the evidence available to the fiduciary, the claims decision was made rationally and in good faith, not whether it was 'right.'").

plaintiff cannot seriously argue that there is any reasonable interpretation other than the one made by GGL.

Second, as discussed above, the medical records simply do not support plaintiff's assertion that she was "totally disabled." (01/11/05 Dr. Dehaven Record; 02/03/05 Dr. Dehaven Record; 03/17/05 Dr. Dehaven Record; 08/09/05 Dr. Dehaven Record; 09/21/05 Dr. Dehaven Record; 12/09/05 Dr. Dehaven Record). With absolutely no medical evidence that plaintiff was physically unable to perform her job, the <u>only</u> reasonable interpretation of the Plan -- based on the information that GGL had at the time -- was that plaintiff was not "totally disabled." In fact, to speculate based on the medical evidence that she was unable to work would be patently <u>unreasonable</u>.[17]

For this additional reason -- namely, that based on the records that GGL had at the time, there is no reasonable interpretation of the Plan other than GGL's interpretation -- summary judgment against plaintiff should be entered.[18]

---

[17] As noted above, in reviewing GGL's decision to determine whether it was reasonable, the Court is limited to the same evidence and records that GGL had at the time it made the decision to deny benefits. See Morse, 2006 WL 2883252, at *2 (The court's function is to determine "whether there was a reasonable basis for the decision, based upon the facts known to the administrator at the time the decision was made."); see also Paramore, 129 F.3d at 1451. In other words, the Court cannot look outside of the record that was presented to GGL.

[18] Again, plaintiff's claim fails at step two of the analysis because GGL's interpretation of the Plan was not "wrong." Therefore, just as with step three of the analysis, steps four and five do not demand inordinate attention here, and even if the Court were to continue the analysis to steps four and five, GGL would still prevail.

## IV.  CONCLUSION

**WHEREFORE, PREMISES CONSIDERED,** Greater Georgia Life Insurance Company requests that the Court enter an order granting summary judgment in its favor and dismissing plaintiff's claim.

                                               s/ Michael L. Lucas  
                                               Michael L. Lucas (LUC004)  
                                               Graham W. Gerhardt (GER014)  
                                               Attorney for Defendant Greater  
                                               Georgia Life Insurance Company

**OF COUNSEL:**  
BURR & FORMAN LLP  
3100 Wachovia Tower  
420 North 20th Street  
Birmingham, Alabama  35203  
Telephone: (205) 251-3000  
Facsimile: (205) 458-5100

---

     With respect to step four, GGL's interpretation was "reasonable," as discussed in Section D and E above.  With respect to step five, GGL clearly benefits Plan participants on the whole -- through decreased costs and lower premiums -- through its consistent practice of denying claims made by claimants who (i) have not seen a physician; and (ii) have no medical evidence to support their claim.  See Williams v. BellSouth Telecomm., Inc., 373 F.3d 1132, 1138 (11th Cir. 2004) ("[I]f the administrator can demonstrate a routine practice or give other plausible justifications -- such as benefitting the interests of the interests of other beneficiaries -- judicial deference to it may be granted….")

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2006, I electronically filed the foregoing with the Clerk of the Court Defendant's Brief in Support of Its Motion for Summary Judgment using the CM/ECF system which will send notification of such filing to the following:

Samuel L. Adams
P.O. Box 1690
153 South Oates Street
Dothan, Alabama  36302

                                              s/ Michael L. Lucas
                                              OF COUNSEL