# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

EVA WILLIAMS,            )
                           )

       PLAINTIFF,      )
                           )

v.                        )      CIVIL ACTION NO:
                           )      1:06-CV-387-CSC

GREATER GEORGIA LIFE  )
INSURANCE COMPANY,     )
                           )

       DEFENDANT.    )

## DECLARATION OF KRISTIE WOODS

I, Kristie Woods, hereby declare and state the following:

1.     I am over 21 years of age, I have personal knowledge of the matters contained in this declaration, and I give this declaration voluntarily and without coercion.

2.     I am currently employed by Unicare, which at all relevant time during 2005 and 2006 administered various contracts for Greater Georgia Life Insurance Company ("GGL"). During those times, I acted as Senior Quality Management Specialist/Appeal Coordinator for GGL.

3.     At the time, GGL was the Claims Administrator and Claims Fiduciary for West Point Homes, Inc.'s ("West Point") Short Term Disability Plan ("the Plan").

1516245

EXHIBIT

3

4. As Claims Administrator and Claims Fiduciary, GGL received, processed and paid claims for Short Term Disability ("STD") benefits made by employees of West Point.

5. GGL agreed to pay STD benefits only if an insured West Point employee became "totally disabled" because of an illness or injury.

6. I was personally involved in the claim for STD benefits made by Eva Williams.

7. I understand that Eva Williams worked at West Point's textile manufacturing facility in West Point, Georgia.

8. On July 29, 2005, Ms. Williams filed a claim telephonically with GGL for STD benefits, alleging that osteoarthritis in her lower leg rendered her "totally disabled." (I have attached the case notes on Ms. Williams's claim as "Exhibit A" to this declaration.)

9. After Ms. Williams submitted her claim, GGL mailed her a package that contained, among other things, an authorization for release of medical information and a subrogation form.

10. On August 1, 2005, GGL faxed Ms. Williams's doctor, Dr. Dehaven, a request for medical records.

11. On August 3, 2005, GGL received an off-work note but no medical records from Dr. Dehaven's office.

12.  GGL followed up with Dr. Dehaven's office to determine if Ms. Williams had actually had a visit with the doctor; Dr. Dehaven's office confirmed by fax that Ms. Williams had merely called in for an extended leave through December 2005, had not been seen by Dr. Dehaven, and had not received any treatment or care.

13.  GGL followed up with Ms. Williams by telephone on August 3 and 4, 2005. Ms. Williams told GGL that she had not been seen by a physician, and that Dr. Dehaven had informed her that she did not need to come in for an appointment.

14.  During this telephone call, GGL informed Ms. Williams that medical documentation indicating that she was seen by a physician was needed to support her request for disability benefits.

15.  GGL denied Ms. Williams's claim for STD benefits because she had not been seen by a physician. This denial was reviewed and approved by Alicia E. Scott, RN, BSN, Disability Case Manager.

16.  GGL's consistent policy and practice under the Plan's definition of "totally disabled" was to require an individual claiming to be totally disabled to actually see a physician; in other words, the physician must have actually evaluated the individual in person.

17.    GGL informed Ms. Williams that she had the right to appeal that decision and that GGL would be glad to re-open her claim when the necessary information was submitted for review.

18.    On August 10, 2005, GGL returned Ms. Williams's call and advised her that her claim had been denied and that the medical records did not support her claim. Ms. Williams stated she was still having problems and was unsure why her benefits were cutoff. GGL advised Ms. Williams that the denial letter would outline her right to appeal the decision.

19.    On August 16, 2005, Ms. Williams contacted GGL and requested another copy of the denial letter. Another copy was mailed to Ms. Williams via certified mail.

20.    On August 22, 2005, Ms. Williams contacted GGL again and requested that it contact Dr. Dehaven's office to obtain medical records to reconsider her claim. The Disability Case Manager at GGL agreed to do so. A message was left at Dr. Dehaven's office to fax medical notes to GGL.

21.    On August 24, 2005, medical notes were faxed from Southern Bone and Joint (Dr. Dehaven's office) to GGL. (I have attached these records as "Exhibit B" to this declaration.)

22.    On August 24, 2005, GGL again advised Ms. Williams that it was unable to approve her STD based on the medical records received due to the fact

that she had received no treatment during the time she stopped working, and because the records did not support disability. GGL advised Ms. Williams that she would need to file a letter of appeal.

23. On August 24, 2005, GGL transmitted this information to Ms. Williams's employer as well via e-mail.

24. On October 27, 2005, GGL received Ms. Williams's request for review of her denial of benefits.

25. In accordance with its appeal procedures, GGL requested medical records from Ms. Williams's physicians, including from Dr. Dehaven.

26. GGL received the requested medical records on November 9, 2005.

27. GGL determined that Ms. Williams was not "totally disabled" as defined in the Plan, and upheld the initial denial of Ms. Williams's claim for STD benefits. (I have attached the November 29, 2005 letter to Ms. Williams denying her appeal as "Exhibit C" to this declaration.)

28. No medical judgment was involved in the denial of Ms. Williams's claim, as the claim was initially denied because Ms. Williams had not seen a physician, and subsequently denied because there was no medical information to support a finding of total disability.

29. If Ms. Williams had qualified for STD benefits, she would have been entitled to a total of $5,980.00 in benefits.

I declare under penalty of perjury that the foregoing is true and correct.

**Further declarant saith not.**

Date: 11/16/06

Kristie Woods

# Exhibit A

# UNICARE.

## Case Report - Williams, Eva W. Mrs.

### Personal

| | |
|---|---|
| Employee Name | Williams, Eva W. Mrs. |
| Social Security # | |
| Address | |
| City/State/Zip | AL 36310 |
| Home Phone | |
| DOB/Age | |
| Sex | Female |

### Employment

| | |
|---|---|
| Employer | WestPoint Home, Inc. - Abbeville Non-Bargaining Bracket 6 ($170 Optional) |
| Department | |
| Shift | |
| Job/JobTitle | Machine Operator |
| Supervisor | |
| Job Class | Medium |
| Insurance Carrier | |
| Employment Date | 10/17/1991 |
| Termination Date | |

*Employment Information is as of the Date of disability.*

### General Case

| | |
|---|---|
| Case ID | 98160 |
| Program ID | STD |
| Case Status ID | D - Appeal Denied - No Days Ap |
| Primary Physician | Dehaven, James Dr. |
| Primary Diagnosis | 000 DCM to Determine or Denied Claim |
| Date Received | 7/29/2005 |
| Incident Date | |
| Incident Description | |

P.o. Box 729, Dothan, AL 36302

800-460-2663

5/22/2006 3:03:47 PM

## Claim

| | |
|---|---|
| Claim Number | |
| Date Of Disability | 7/28/2005 |
| Prognosis Date | 7/28/2005 |
| Close Date | 7/27/2005 |
| Days Open | -1 |

## Diagnoses

| Date | Diagnosis | | Physician |
|---|---|---|---|
| | 715.16 Osteoarthrosis, Localized, Primary, Lower Leg (Knee) | | |
| **Notes:** | dx:hip replacement left side 12/14/04, | | |
| | 000 DCM to Determine or Denied Claim | | |
| **Notes:** | dx:hip replacement left side 12/14/04, | | |
| | 81.51 Hip Replacement, Total | | |
| **Notes:** | | | |
| 8/1/2005 | ZAJHA8A | Automatic Entry | |
| **Notes:** | | | |
| 8/4/2005 | ZAJH8D4 | Automatic Entry | |
| **Notes:** | | | |
| 8/23/2005 | AA08316 | Automatic Entry | |
| **Notes:** | | | |

## Events

| Date Due | Date Completd | Type | Case Manager | Person Contacted | Event Description | Reference To |
|---|---|---|---|---|---|---|
| | 7/29/2005 | Claimform from | xWalsh,Tina | | Claimant | Paper Claim Submission |
| **Notes:** | Sent reg mail to PO Box | | | | | |
| | 7/29/2005 | Packet to | xWalsh,Tina | | Claimant | Claim - Packet |
| **Notes:** | | | | | | |
| | 8/1/2005 | Personal Task or Memo | Broughton-Wedel, Josephine | | DCM | Initial DCM Review |
| **Notes:** | | | | | | |
| | 8/1/2005 | FAX to | Jones, Michelle | | AP | Clinical Info - Initial |
| **Notes:** | sent fax req to AP | | | | | |

5/22/2006 3:03:48 PM

| Notes: | 8/1/2005 | Email to | Jones, Michelle | | Acknowledgment |
|---|---|---|---|---|---|
| | Reply Reply to all Forward Help | | | | |
| | http://mymail.wellpoint.com/exchweb/help/USA/eb/default.htm?readnote.htm | | | | |

From: Jones, Michelle (GA) Sent: Mon 8/1/2005 6:00 AM
To: culpepper.denise@wpatv.com
Cc: murphy.brenda@wpatv.com
Subject: J STD Confirmation - Eva Williams
Attachments: EvaWilliams08.01.05.doc(20KB)
View As Web Page

Attachments: Attachments may contain viruses that are harmful to your computer. Attachments may not display correctly.

| Date | Action | To | Notes | | Type |
|---|---|---|---|---|---|
| 8/2/2005 | Email from | Jones, Michelle | | Employer | Acknowledgment |
| Notes: | ck conf and med recs from AP | | | | |
| 8/3/2005 | Phone Call to | Scott, Alicia | | AP | Clinical Info - Request For |
| Notes: | Left msg for Mabel advising that we rec'd a note but no records. Please cb to let me know if she actually had a visit with the doctor. 800 # w/ ext given. | | | | |
| 8/3/2005 | FAX from | Scott, Alicia | | AP | Clinical Info - Request For |
| Notes: | 7/25/05: Patient called for extended leave of absence. OK'd by Dr. Dehaven. Mailed to patient at P.O. Box 631, Abbeville, AL 36310. Will be unable to work for the period until seen for follow up in December 2005. | | | | |
| 8/3/2005 | Phone Call to | Scott, Alicia | | Claimant | Claim - Status |
| Notes: | Message given to daughter, Darlene for claimant to cb with date she was seen by the doctor. 800 # w/ ext given. | | | | |
| 8/4/2005 | Case Notes | Broughton-Wartel, Josephine | | Case Review | Claim - Denial |
| Notes: | | | | | |
| 8/4/2005 | Mail From | Scott, Alicia | | Claimant | ROI/Reimb Forms Signed |
| Notes: | | | | | |
| 8/4/2005 | Phone Call to | Scott, Alicia | | Claimant | Claim - Status |
| Notes: | Nichoela states that her cell phone number is 334-616-6116. | | | | |
| 8/4/2005 | Phone Call to | Scott, Alicia | | Claimant | Claim - Statue |
| Notes: | States she called the dr and asked for an appt but she told her that she didn't have to come in. advised that she cannot get disability without actually being seen and evaluated by a doctor and she needs to make an appt to be seen. Advised benefits will not be paid until clinical information is submitted from a visit with the doctor to support her absence. Advised that the information can be submitted once she is seen by the doctor. | | | | |
| 8/4/2005 | Phone Call to | Scott, Alicia | | Claimant | Claim - Denial |
| Notes: | advised that file will be closed and we will be glad to re-open it when information is submitted for review. Asked if she would receive back pay. Advised that it depends on the information that is provided and if it is sufficient there is a 7 day waiting period from the date you are seen by the doctor. Claimant hung up the phone. | | | | |
| 8/4/2005 | Letter to | Broughton-Wartel, Josephine | | Claimant | Claim - Denial |
| Notes: | | | | | |
| 8/4/2005 | Personal Task or Memo | Miller, Zanita | | Manager Review | Denial |
| Notes: | denial ltr reviewed and retrnd to DCM for corrections | | | | |
| 8/2/2005 | Email from | Broughton-Wartel, Josephine | | Employer | Acknowledgment |
| Notes: | ck conf and med recs from AP | | | | |
| 8/5/2005 | Letter to | Scott, Alicia | | Claimant | Claim - Denial |
| Notes: | | | | | |

Page 3 of 8

5/22/2006 3:03:48 PM

**Notes:** 8/5/2005 Phone Call to Broughton-Wartel, Josephine Acknowledgment Employer

COT ER--ack will be sent now to DCm

**Notes:** 8/5/2005 FAX from Broughton-Wartel, Josephine Employer Acknowledgment

WestPoint Stevens STD Confirmation
G/GL Reported Information.--
EE NAME: Eva Williams
SSN: ☐☐☐-☐☐-☐☐☐☐
LDW: 07/25/05
WC Related: ☐☐No

Comments: Please forward job description.

Thanks,
Michele Jones, DCM

WPS Confirmed Information --

LDW: 7-27-05
Hours Worked: 8 hours
FDA: 7-28-05
Job Title: Hem Flat Auto
Date of Hire: 10-17-91
Prior STD Dates: 11-01-04 thru 6-13-05
W/C: No
Employee ID #: 47719

Comments:

5/22/2006 3:03:48 PM

Page 4 of 8

Notes: **JD ON FILE***

8/8/2005    FAX from    Broughton-Wartel,
Josephine                                    Employer                Job Description

WestPoint Stevens Inc.
Abbeville Plant
Job Descriptions

**Department:** Flat Sheets                              Date: 8/8/05

**Job Title:** Automatic Flat Operator                  #52308

**Purpose of Job:**
To operate the automatic flat sheet machine. The operator is responsible for the quality as well as the quantity of sheets produced by the machine. Operator should try to maximize down time while producing a quality product. This is a combination job which includes 3 operators. They will rotate every hour during their shift. These operators will operate ma-chine, inspect sheets, repair sheets, and doff sheets to buggy or bag and pack sheets in car-ton.

**Duties and Responsibilities:**

1. Be familiar with plant safety rules and procedures.
2. Creel roll of Cloth. Doff roll of cloth. Patrol machine frequently. Fix repairs and any other job necessary to keep machine running.
3. Check quality of sheets. Anticipate problems which may arise.
4. Minimize downtime by quickly repairing any breakdown.
5. Sign on to AS400 at beginning of shift and sign off at end of shift.
6. Follow instructions on calling for an AGV on the AS400 terminal, hooking and Unhooking full or empty buggies. Watch out for and give the right of way to AGVs on the floor.
7. Record dozens and fill out all reports pertaining to automatic flat sheet machine.
8. Blow off machine. Make minor adjustments on machine.
9. Perform job at standard efficiency. Preventive maintenance.
10. Operator that sews borders will have to secure border material, load border material to machine, secure piping or binding, also load title to machine.
11. Tear out repair items that need repair. All items should be fixed except the one that the border is to go on.
12. Will have to handle pallet jack to move loaded pallet.
13. Bag and pack institution sheets or string tie them in a bundle and pack them in a carton.
14. Cut labels in off quality sheets and mark 3rds.
15. Thread machine and change bobbins. Change stitches and change folders.
16. Any other duties assigned by supervisor to keep department running smoothly.

**Physical/Mental activities considered essential to job:**

1. Literacy appropriate to do this job.
2. Weekend work required as well as emergency overtime.
3. Acceptable eyesight, no color blindness, reading, writing, while working.
4. Bending, reaching required to adjust machine.
5. Creel 2000-pound roll of cloth off platform into rolling band on machine.
6. Standing and walking while patrolling machine when it is running. Sudden movement is necessary while machine is running if a problem arises.
7. Required to wear eye protection when using compressed air.
8. Other physical activities required of the job are bending, kneeling, stooping, crouching, lifting, carrying, pushing, and grasping.

Page 5 of   8

5/22/2006 3:03:48 PM

9. Operator is required to sit and sew repairs when needed(s).
10. Pushing and pulling of buggies required with an exertion of 20 lbs. to move this buggy.
11. Bagging and Packing institution sheets, or string life end pack.
12. Required to lift up to 62 lbs. But this is to be done with assistance. ****
13. Withstand exposure to cloth fabric, cloth dye, nuisance dust and low level of formaldehyde.
14. Climb ladder three steps high, place chipboards in machine.

WestPoint Stevens has the discretion to change or modify job duties and essential-tial functions at any time. Note further that this list of duties and essential ele-ments is an attempt to adequately describe this job, but cannot be considered to be an exhaustive list.

**** Method has been changed. Operator is to lay carton down and place sheets inside of carton. An operator with a height of 4 foot 10 inches will use a platform to place sheet into carton. They could be reaching over shoulder height without platform.

| Reviewed on – | | By: | | |
|---|---|---|---|---|
| 8/10/2005 | Phone Call to | Broughton-Wartel, Josephine | Claimant | Call - Returning Ee's |
| **Notes:** | returned vm call to ee- dom advised ee -claim has been denied- medical no longer support- ee states she is still having problems and is unsure why her benefits were "cut off". Dom advised ee - denial letter will outline her rights to appeal the our decision.I see disconnected the line. | | | |
| 8/16/2005 | Phone Call from | Broughton-Wartel, Josephine | Claimant | Denial |
| **Notes:** | cb ee- she request another copy of denial ltr -she never received the lst one.. | | | |
| | ****dom re-mail denial ltr certified- #7004 2890 0002 4043 3501 to ee | | | |
| 8/22/2005 | Phone Call from | Broughton-Wartel, Josephine | Claimant | Claim - Denial |
| **Notes:** | cb ee- she is aware of her denied claim.  Pls contact dr. Haven office to obtain medical to re-consider her claim. DOM agreed to to so. | | | |
| | Cot sp Dehaven- left messeg for nurse peggy pls sf essp or fax medical notes to 404/852 9295 | | | |
| 8/24/2005 | FAX from | Broughton-Wartel, Josephine | A/P | Clinical Info - Update |
| **Notes:** | notes recvd from southern bone & joint - post denial covering dates from 07/22/04 thru 06/09/05 ... | | | |
| | 07/22/04 | | | |
| | 10/05/04 | | | |
| | 12/13/04 | | | |
| | 01/11/05 | | | |
| | 02/03/05 | | | |
| | 03/17/05 | | | |
| | 04/21/05 | | | |
| | 05/23/05 | | | |
| | not again until 06/09/05 | | | |
| | notej ee stop working 07/26/05- Why????? | | | |
| 8/24/2005 | Phone Call to | Broughton-Wartel, Josephine | Claimant | Denial |
| **Notes:** | cot to ee- advised- medical recvd - unable to approved based on medical recvd- due date gap- no treated during the time she stopped working- she will need to file a letter of appeal- ee understood.. | | | |

Page 6 of 8

5/22/2006 3:03:48 PM

| Date | Action | Name | Role | Result |
|---|---|---|---|---|
| 8/24/2005 | Email to | Broughton-Wartel, Josephine | Employer | Denial |

**Notes:** From: Wartel, Josephine Sent: Wed 8/24/2005 12:04 PM
To: Culpepper Denise
Cc:
Subject: RE: Eva Williams - Claim
Attachments:

View As Web Page
Yes, her claim is denied. Initial we deny her claim.* no medical received to determine disability- then we received her medical records on 08/22/05. It does not support disability.

Claim remains denied.

Josephine B. Wartel
Disability Service Center
Disability Case Manager
1-800-905-0016 ext. 29284

| Date | Action | Name | Role | Result |
|---|---|---|---|---|
| 10/4/2005 | Phone Call to | Broughton-Wartel, Josephine | Claimant | Denial |

**Notes:** returned vm call to ee-advised- her claim has been denied- pls ttle letter of appeal.

| 10/28/2005 | Letter from | Woods, Kristie | Claimant | Appeal - UNICARE received |

**Notes:** Appeal request received from EE on 10/27/05

| 10/28/2005 | Email to | Broughton-Wartel, Josephine | Employer | Job - Occupation |

**Notes:** From: Wartel, Josephine Sent: Fri 10/28/2005 9:25 AM
To: culpepper.denise@wpstv.com
Cc:
Subject: re: SHEILA PRIDE-NEW CLAIM ACK
Attachments: WESTPOINT STEVENS-INITIAL CONFIRMATION.doc(27K8)?

| 10/28/2005 | Letter to | Woods, Kristie | Claimant | Appeals - Other |

**Notes:** Appeal ack letter sent to EE via Fed Ex. Letter attached for review.

| 10/31/2005 | Phone Call from | Woods, Kristie | Claimant | Appeals - Other |

**Notes:** Recd T/C from EE-Status of Appeal
EE indicated that she received the ack letter and questioned if the need to request med info from her AP's office. Advised EE that I have requested the medical records from Dr. DeHaven's office on 10/28/05 via fax. Explained the appeal process and advised EE to follow-up with her AP's office to ensure that the requested medical info is sent to this office.

| 11/10/2005 | Phone Call to | Woods, Kristie | Claimant | Appeals - Other |

**Notes:** Returned T/C to EE: Status of Appeal
Advised EE that we have received the medical documentation from her AP/Dr. Dehaven. Advised EE that I will be reviewing file within the next 5-7 days and a decision will be made during this time. Informed EE that a decision would only be delayed if her file must be sent for medical review. EE stated that she understood.

| 12/6/2005 | Case Notes | Woods, Kristie | Case Review | Appeals - Other |

**Notes:** 45 day appeal review - 12/10/05

| 11/29/2005 | Phone Call to | Woods, Kristie | Claimant | Appeals - Other |

**Notes:** Returned T/C to EE: Status of Appeal
Was advised that EE was not at home; left message for a return call.

| 11/29/2005 | Case Notes | Woods, Kristie | Case Review | Appeals - Determination |

**Notes:** Appeal Determination:Decision - Upheld
Based on the review of the medical documentation EE is not TD from her own occupation effective 7/28/05. Therefore, the denial decision has been upheld. Summary attached for review.

| 11/29/2005 | Letter to | Woods, Kristie | Claimant | Appeals - Determination |

**Notes:** Appeal determination letter sent to EE via Fed Ex. Letter attached for review.

5/22/2006 3:03:46 PM

| | 11/29/2005 | Case Notes | Woods, Kristie | Case Review | Appeal - 30-day Review |

**Notes:** 30 day review completed - Appeal reviewed completed

| 11/22/2006 | 11/30/2006 | Case Notes | Woods, Kristie | Case Review | Appeals - Other |

**Notes:** File referred to manager for review

| | 12/1/2005 | Phone Call from | Woods, Kristie | Claimant | Appeals - Other |

**Notes:** Received T/C from EE: Appeal Decision
EE stated that she disagreed with our decision and indicated that she was not able to work and questioned if we have a copy of her JD. Advised EE that we do have a copy of her JD and read the JD to her. EE stated that based on her JD she could not do her job. Advised EE that based on her medical documentation she did not have functional limitations that would prevent her from performing her JD. Also, advised EE that she did not see her AP prior to her going out on disability. She stated that she was not able to get an appointment with her AP and this is why she did not see her AP. She stated that she disagree with this decision and she plans to follow the next step to fight this denial decision.

| | 4/3/2006 | Letter to | Woods, Kristie | Attorney Rep | Appeals - Other |

**Notes:** Response to attorney regarding re-review of file. Letter attached for review.

5/22/2006 3:03:48 PM

# Exhibit B

**S.B.J.S. PC**
**DBA SOUTHERN**
**BONE & JOINT**
**SPECIALISTS**



THE PRACTICE OF
ORTHOPAEDICS

MAILING ADDRESS
POST OFFICE BOX 729
DOTHAN, ALABAMA 36302-0729
(334) 793-2663
1-800-460-2663
FAX (334) 836-2248
www.southernbone.com

WILLIAM B. HANSON, M.D.
JOHN H. HALEY, JR., M.D.
ROBERT W. MOORE, JR., M.D.
J. PAUL MADDOX, M.D.
J. BRET SIMPSON, M.D.
R. BRUCE HALL, M.D.
D. KEITH GRANGER, M.D.
HENRY H. BARNARD, M.D.
CHRISTOPHER E. ROBINSON, M.D.
JAMES P. DeHAVEN, M.D.
R. DEAN LOUEY, M.D.
DAVID W. ALFORD, M.D.
O.H. (SKIP) CHITWOOD III, M.D.
FLEMING G. BROOKS, M.D.
PATRICK W. LETT, M.D.
TIMOTHY M. HALEY, M.D.

BONNIE J. DUNGAN, M.D.
PHYSICAL MEDICINE AND REHABILITATION

MILTON H. WOOD, C.E.O. / ADM.

EAST LOCATION
1500 ROSS CLARK CIRCLE

WEST LOCATION
FLOWERS HOSPITAL
4300 WEST MAIN STREET, SUITE 14

## CONFIDENTIAL HEALTH INFORMATION ENCLOSED

Health Care Information is personal and sensitive information related to a person's health care. It is being faxed to you after appropriate authorization from the patient or under circumstances that doesn't require patient authorization. You, the recipient are obligated to maintain it in a safe, secure and confidential manner. Re-disclosure without additional patient consent or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain confidentiality could subject you to penalties described in federal and state law.

To: Josephine

From: Peggy Smith
(334)836-2226 Ext 224

Company:

Date: 8-22-05

Fax Number: 404-682-9288

Total No. Of Pages: 10

Phone Number:

Re: Eva Williams

Comments: Office notes from 7-22-04 to 8-9-2005

### IMPORTANT WARNING:

This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information is STRICKLY PROHIBITED. If you have received this message by error, please notify us immediately and destroy the related message.

Patient: 199980 EVA N WILLIAMS
Date   : 07/22/2004

JAMES P DEHAVEN, MD

This is a 50 year old black female who works at Westpoint Stevens.
She is here today with back pain and right hip and thigh pain for a
year or more. It is progressively getting worse. There is a lot of
pain at night time. When she stands up during the day she has
tremendous problems. She has seen Dr. Meadows who has given her pain
pills.

PAST MEDICAL HISTORY: Significant for hypertension, hyperlipidemia.
She denies diabetes or heart problems.

PHYSICAL EXAMINATION:
Exam shows an obese female whose ROM is somewhat limited, especially
on internal and external rotation. No real tenderness in her back.
Most of the tenderness is in the anterior lateral aspect of her hip.
She is neurologically intact.

X-RAYS:
She came accompanied today with some back x-rays that show some
arthritis in the back and by what I can see of the hip it looks like
she has arthritis.

Today I got a pelvis x-ray, AP and frog leg pelvis included and she
has fairly marked arthritis in the right hip. There is a large cyst
in the femoral head.

IMPRESSION:
Back pain and right hip pain secondary to severe degenerative
arthritis to the hip.

PLAN:
I broached the subject of total hip arthroplasty for this lady and I
think that will be an eventuality for her. To buy a little time and
make her feel better for a time I am going to do an intra-articular
injection with Xylocaine, Marcaine and Betamethasone. I gave her
some pain medicine and a handout on the total hip arthroplasty. She
will think about that and let me know. In the meantime, I will leave
the door open for p.r.n. return. JPD/sb
Cc: Dr. Richard Meadows

```
Patient: 199980 EVA W WILLIAMS                    Age:
Date   : 10/06/2004           JAMES P DEHAVEN, MD
```

Ms. Williams has made a decision to go ahead and scheduled her total
hip arthroplasty. Today we have gone over a lot of the details, we
will schedule for her a right total hip arthroplasty and we will
send her throughout system. I will see her in the clinic
preoperatively to go over the details of surgery, etc. JPD/km

Patient: 199980 EVA W WILLIAMS     ████████ Age: ●
Date   : 12/13/2004        JAMES P DEHAVEN, MD

---

Ms. Williams was interviewed for a right total hip arthroplasty tomorrow at Flowers. Today I have gone over the details of the surgery, the attendant risks, the post operative course and she wishes me to proceed in the direction of surgery. JPD/sb

Patient: 199980 EVA W WILLIAMS               █████████ Age: ●
Date   : 01/11/2005                          JAMES P DEHAVEN, MD

---

Ms. Williams is a follow up for total hip arthroplasty and she is
doing very well. The wound looks excellent. X-rays look perfect. At
this point we will stop the Coumadin. She is on a cane. She can
start driving. I will see her in the clinic in six weeks. JPD/ca

Patient: 199980 EVA W WILLIAMS        Age:
Date    : 02/03/2005        JAMES P DEHAVEN, MD

---

Ms. Williams' hip is doing very well. She has minimal antalgic gait and she is only less than two months from surgery so I think she is really doing very well. More than anything reassurance that she will get completely better. I will see her in the clinic in six weeks unless problems arise. JPD/ca

Patient: 199980 EVA W WILLIAMS
Date   : 03/17/2005

Age:
JAMES P DEHAVEN, MD

---

Mrs. Williams is actually doing very well. There is still a little
bit of an antalgic gait but not bad. I think that it would be just
a matter of time for her to get better.

She wants to stay out another couple of months because that is the
length of her disability program and I don't have any problem with
that.

I don't officially need to see her until she is a year post-
operative for X-Rays. If there is a problem in the meantime she
will let us know.  JPD/srh

Patient: 199980 EVA W WILLIAMS                          Age:
Date   : 04/21/2005              JAMES P DEHAVEN, MD

---

Mrs. Williams was having a lot of back pain a couple of weeks ago, and
it has generally settled down.  It is certainly improving.  At this
point we do not want to do anything other than give her some Robaxin
that she can take as needed.  She needs to use a little ice and resume
activity to tolerance and follow-up here as needed.  I will need to get
her back when she is a year post-operative for x-ray of her hip.
JPD/clb

Case 1:06-cv-00387-CSC   Document 18   Filed 11/22/2006   Page 26 of 31

Patient: 199980 EVA W WILLIAMS
Date   : 06/23/2005

Age:
JAMES P DEHAVEN, MD

Ms. Williams' right hip is hurting somewhat, but her left hip is
giving her more problem than the right hip.  Today I got x-rays of
her left hip (actually they got an x-ray also of her right hip in
error), and both hips look fine.  The left hip is a marked valgus
deformity, but that is congenital in nature.  However, I see no
arthritis, whatsoever.  Her operated hip looks perfect.  More than
anything,

I just want to give Ms. Williams reassurance that with time, she
will do better.  A lot of the issue is she is back to work and feels
that that is contributing to her lack of well being.  Apparently she
has to have an income, so she needs to do what she can do.  I want
to see her back when she is a year postoperative unless problems
arise.
JPD/cp

Patient: 199980 EVA W WILLIAMS
Date    : 08/09/2005                    _____  Age: ●
                                        JAMES P DEHAVEN, MD
_____
Mrs. Williams is doing okay. She said that "wobbles" and she does
have a little bit of an unsteady gait but she said that pain wise,
she is getting a lot better.

Again, she is just not over it.  She had some administrative issues
here that we have given her some paperwork for.  Other than that, I
will see her in the clinic when she is a year post-operative for an
X-Ray.  JPD/srh

# Exhibit C



Greater Georgia Life
Atlanta Disability Service Center
PO Box 105428
Atlanta, GA 30348-5426
Phone: (800) 905-0019, Ext. 29251
Fax: (404) 662-8286

VIA FEDERAL EXPRESS

November 29, 2005

Eva Williams
~~~~~~~~~~~~~~
~~~~~~~~, AL 36345

RE: West Point Home, Inc. Short-Term Disability (STD) Plan

Dear Ms. Williams:

I am writing to advise you of the outcome of your request for review of the denial of
benefits under the West Point Home, Inc. Short-Term Disability (STD) Plan. Greater
Georgia Life, as claim administrator for the West Point Home STD Plan, has concluded
its review of your claim and has determined that the information submitted for the
purpose of appealing the denial of benefits effective July 28, 2005 does not support a
disability as defined by the Plan.

Georgia Greater Life determines a claimant's eligibility for STD benefits under the West
Point Home, Inc. Plan based upon claim and medical documentation that supports a
claimant's inability to perform their job duties. Medical evidence includes, but is not
limited to, medical/office records, hospital records, physical exam findings, operative
reports, etc. that are obtained from the claimant's treating healthcare providers. We may
also consider the claimant's self-reported activities of daily living as indicated on an
Activities of Daily Living form.

THE PLAN - "TOTALLY DISABLED"

"Total Disabled" or "Total Disability" means that you: (1) are unable, due to a disability
(whether Illness or Injury), to perform all of the duties of your regular occupation,
supported by objective medical evidence; (2) are under the regular care and attendance of
a physician, appropriate for the condition causing the disability; and (3) are not otherwise
employed for wage or profit.

Eva Williams
November 29, 2005
Page 2

## INTIAL REVIEW

Our records indicate that you filed for short-term disability benefits beginning July 28, 2005, due to Osteoarthrosis, Lower Leg. It was noted that you had a hip replacement on December 14, 2004. Your claim was received on July 29, 2005 in which James Dehaven, M.D. was indicated as your treating physician.

On August 3, 2005, your Disability Case Manager (DCM) received a fax from your physician's office which was office notes dated July 25, 2005. The office notes indicated that you contacted the office for an extended leave of absence. You were granted the leave and indicated that you will be unable to work until seen for a follow up in December 2005. Your DCM attempted to contact you on August 3, 2005 to verify the date that you were seen by your physician. On August 4, 2005 you informed your DCM that you contacted your physician's office to schedule an appointment and was advised that you did not need to come in for an appointment. During the conversation you were advised that medical documentation was needed indicating that you were seen by a physician for your request for disability.

Based on the review of the medical documentation, Georgia Greater Life determined that the medical did not support your disability due to you were not seen by a physician. A letter, dated August 5, 2005, advising you of our determination, was sent to you.

## EVALUATION ON APPEAL

On October 27, 2005, Greater Georgia Life received your request for review, which was dated October 22, 2005. We acknowledged receipt of your appeal on October 28, 2005.

Based on our initial review of your appeal request it was determined that additional medical documentation was necessary for the review. On October 28, 2005 medical documentation and a Functional Capacity Estimate form was requested from Dr. Dehaven. The requested medical documentation was received on November 9, 2005. The office notes dated July 25, 2005 indicated that you contacted Dr. Dehaven and requested a leave of absence and he agreed to your request. It was noted that you were not seen by your physician. On August 9, 2005 the office notes indicated that you were doing okay and that you indicated that you "wobble". It was noted that you had a little bit of an unsteady gait. He indicated that in terms of your pain you were a lot better. You were advised to follow-up in a year for your post operative x-ray. On August 19, 2005 you contacted your physician's office and indicated that you needed a letter stating that you were unable to work at this time and that your disability carrier will need medical records. At that time, you were informed by your physician's office that your disability carrier will need to request the medical records. The office notes dated September 21, 2005 indicated that you complained of having a lot of back pain. X-rays were taken and the results indicated that you have arthritis but not that severe. You were prescribed a Medrol Dose Pack and you were given Robaxin. You were advised to follow up as needed. The requested Functional Capacity Estimate form was not received.

Eva Williams
November 29, 2005
Page 3

DECISION ON APPEAL

The West Point Home, Inc. Plan states that "you must be under the regular care and attendance of a physician, appropriate for the condition causing disability". The medical documentation indicates that you contacted your physician's office on July 25, 2005 but you did not see your physician until August 9, 2005. The medical documentation received did not provide any functional limitations or objective findings to support that you were unable perform all of the duties of your regular occupation.

Consequently, based upon review of all documentation, we have determined that the medical information submitted in support of your appeal did not provide evidence that you were "totally disabled" as defined by the Plan. Therefore, STD benefits are denied effective July 28, 2005, and our file remains closed.

Additionally, if you disagree with our decision on this matter, you have the right to bring action in federal court under ERISA Section 502(a) (1) (B). Furthermore, you are entitled to receive, upon request and free of charge, reasonable access to, and copies of all documents, records, and other information relevant to your claim for benefits.

If you have any questions or concerns, please feel free to contact me at 800-905-0018, extension 29251.

Sincerely,

Kristie Y. Woods
Senior Quality Management Specialist/Appeal Coordinator