IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVA WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:06cv387-CSC |
| ) | |
| GREATER GEORGIA LIFE ) | |
| INSURANCE CO., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

The plaintiff, Eva Williams ("Williams"), brings this action against defendant Greater Georgia Life Insurance Company ("Greater Georgia"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(1)(B)[1] seeking payment of short term disability benefits pursuant to an employee welfare benefit plan provided by her employer, West Point Home, Inc., and administered by Greater Georgia. Specifically, Williams contends that Greater Georgia erroneously denied her benefits under her short term disability plan because, according to her, she meets the eligibility requirements

---

[1] 29 U.S.C. § 1132(a)(1)(B), which allows claimants to bring a civil action to recover benefits under an ERISA plan, provides:

(a) Persons empowered to bring a civil action. A civil action may be brought-

    (1) by a participant or beneficiary-
    . . .
    (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan; . . ..

for short term disability under the Plan. The court has jurisdiction of this ERISA claim pursuant to 29 U.S.C. §1132(e)(1). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

Now pending before the court is the defendant's motion for summary judgment and motion to strike evidentiary submission. *See* Docs. # 13 & 20. The plaintiff has filed a response in opposition to the motion for summary judgment. After careful review of the motion for summary judgment, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that the defendant's motion for summary judgment is due to be granted. The court also concludes that the motion to strike is due to be granted in part and denied in part.

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2] The party moving for summary judgment "always bears the initial responsibility of

---

[2] In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the court stated:

> "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . .We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial

informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also* FED. R. CIV. P. 56(e). ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do

---

<div style="padding-left: 2em;">

in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . . .

</div>

*Id.* at 324.

more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997); *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995).

However, if there is a conflict in the evidence, "the [plaintiff's] evidence is to be believed and all reasonable inferences must be drawn in his favor." *Anderson*, 477 U.S. at 255; *Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law  FED. R. CIV. P. 56(c). With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

### III. FACTS

Viewed in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, the following facts are treated as undisputed for the purpose of summary judgment. Williams was employed by West Point Homes, Inc. as an automatic flat operator when, on July 29, 2005, she telephonically applied for short term disability ("STD")

benefits under West Point Homes, Inc.'s Short Term Disability Plan, a claim which was ultimately denied. The genesis of Greater Georgia's denial originated in July 2004.

On July 22, 2004, Williams presented to her treating physician, Dr. James DeHaven, complaining of back, hip and thigh pain. (Pl's Ex. 2 at 22). At that time, Dr. DeHaven suggested a total hip replacement. (*Id*.) On October 6, 2004, Williams decided to undergo surgery to replace her hip. (*Id*. at 21). On December 14, 2004, Williams had a total right hip arthroplasty. (Def's Ex. 5). On December 30, 2004, Dr. DeHaven certified that Williams was unable to work "for 3 months from time of surgery, 12-14-04." (Def's Ex. 6).

On January 11, 2005, Williams presented to Dr. DeHaven for a follow-up visit after her surgery. (Def's Ex. 7). At that time, Dr. DeHaven noted that "she is doing very well. The wound looks excellent. X-rays look perfect." (*Id.*).

Williams was next seen by Dr. DeHaven on February 3, 2005. At that time, Dr. DeHaven noted that "Williams' hip is doing very well. She has minimal antalgic gait and she is only less than two months from surgery so I think she is really doing very well." (*Id*.)

On March 17, 2005, Dr. DeHaven examined Williams and noted that she was "actually doing very well." (Def's Ex. 8). He also noted that "[s]he wants to stay out another couple of months because that is the length of her disability program and I don't have any problem with that." (*Id*.) He also certified that Williams was unable to work "for two more months." (Def's Ex. 6).

On April 21, 2005, Williams presented to Dr. DeHaven complaining of "a lot of back

5

pain a couple of weeks ago," but that it "has generally settled down." (Def's Ex. 8). He noted that the pain was improving and prescribed Robaxin and ice. (*Id*.)

On May 3, 2005, Dr. Dehaven certified that Williams was unable to work "for 6 weeks" but that she could return to work with no restrictions on June 13, 2005. (Def's Ex. 6). Williams returned to work on June 13, 2005. (Def's Ex. 9). On June 23, 2005, Williams returned to Dr. DeHaven complaining that her "right hip [was] hurting somewhat, but her left hip is giving her more problems than the right hip." (Pl's Ex. B at 9). He x-rayed both hips. He noted no arthritis and opined that her "operated hip looks perfect." (*Id*.) According to Dr. DeHaven, "[a] lot of the issue is [Williams] is back at work and feels that that is contributing to her lack of well being." (*Id*.)

Williams worked from June 13, 2005 until July 27, 2005. (Def's Ex. 9). On July 29, 2005, Williams telephonically requested short term disability benefits for osteoarthrosis in her lower left leg. (Def's Ex. 1A). A claims package was mailed to Williams to complete. (*Id*). Williams provided Greater Georgia with a certification from Dr. Dehaven, dated On July 25, 2005, that she was unable to work "until [she was] seen for follow up in December 2005." (Def's Ex. 6). It is undisputed that Williams obtained this certification without being seen by Dr. DeHaven. (Def's Ex. 1A).

On August 4, 2005, Williams advised Greater Georgia that Dr. DeHaven advised her that she did not need to be seen. (*Id*.) Greater Georgia advised Williams that "she cannot get disability without actually being seen and evaluated by a doctor" and that benefits "will

6

not be paid until clinical information is submitted from a visit with the doctor to support her absence." (*Id*.) Consequently, her file was closed and her claim was denied. (*Id*.)

On August 9, 2005, Williams presented to Dr. DeHaven. His treatment note is as follows.

> Mrs. Williams is doing okay. She said that [she] "wobbles" and she does have a bit of an unsteady gait but she said that pain wise, she is getting a lot better.
>
> Again, she is just not over it. She had some administrative issues here that we have given her some paperwork for. Other than that, I will see her in the clinic when she is a year post-operative for an X-ray.

(Def's Ex. 1B).

Williams was advised that her claim was denied and advised of her right to appeal. (*Id*.) Williams requested that Greater Georgia reconsider her claim. Dr. DeHaven's office forwarded Williams' medical record to Greater Georgia for reconsideration. (*Id*.) After reviewing her medical records, Greater Georgia again denied Williams' request for short term disability benefits because of the "date gap – no (sic) treated during the time she stopped working." (*Id*.) She was advised that she would need to submit a written letter of appeal. (*Id*.)

On Greater Georgia received Williams' notice of appeal on October 27, 2005. (*Id*.) On November 29, 2005, Greater Georgia denied Williams' appeal of the decision to deny her short term disability benefits. Greater Georgia detailed the procedural history of Williams' claim and then set forth the reasons for its decision.

> Our records indicate that you filed for short-term disability benefits beginning

7

July 28, 2005, due to Osteoarthrosis, Lower Leg. It was noted that you had a hip replacement on December 14, 2004. Your claim was received on July 29, 2005 in which James Dehaven, M.D. was indicated as your treating physician.

On August 3, 2005, your Disability Case Manager (DCM) received a fax from your physician's office which was office notes dated July 25, 2005. The office notes indicated that you contacted the office for an extended leave of absence. You were granted the leave and indicated that you will be unable to work until seen for a follow up in December 2005. Your DCM attempted to contact you on August 3, 2005 to verify the date that you were seen by your physician. On August 4, 2005 you informed your DCM that you contacted your physician's office to schedule an appointment and was advised that you did not need to come in for an appointment. During the conversation you were advised that medical documentation was needed indicating that you were seen by a physician for your request for disability.

Based on the review of the medical documentation Georgia Greater Life determined that the medical (sic) did not support your disability due to you were not seen by a physician. A letter, dated August 5, 2005, advising you of our determination, was sent to you.
. . .
On October 27, 2005, Greater Georgia Life received your request for review, which was dated October 22, 2005. We acknowledged receipt of your appeal on October 28, 2005.

Based on our initial review of your appeal request it was determined that additional medical documentation was necessary for the review. On October 28, 2005 medical documentation and a Functional Capacity Estimate form was requested from Dr. Dehaven. The requested medical documentation was received on November 9, 2005. The office notes dated July 25, 2005 indicated that you contacted Dr. Dehaven and requested a leave of absence and he agreed to your request. It was noted that you were not seen by your physician. On August 9, 2005 the office notes indicated that you were doing okay and that you indicated that you "wobble." It was noted that you had a bit of an unsteady gait. He indicated that in terms of your pain you were a lot better. You were advised to follow-up in a year for your post operative x-ray. On August 19, 2005 you contacted your physician's office and indicated that you needed a letter stating that you were unable to work at this time and that your disability carrier will need medical records. At that time, you were informed by your physician's office that your disability carrier will need to request the

> medical records. The office notes dated September 21, 2005 indicated that you complained of having a lot of back pain. X-rays were taken and the results indicated that you have arthritis but not that severe. You were prescribed a Medrol Dose Pack and you were given Robaxin. You were advised to follow up as needed. The requested Functional Capacity Estimate was not received.
> . . .
> The West Point Home, Inc. Plan states that "you must be under the regular care and attendance of a physician, appropriate for the condition causing disability." The medical documentation indicates that you contacted your physician's office on July 25, 2005 but you did not see your physician under August 9, 2005. The medical documentation received did not provide any functional limitations or objective findings to support that you were unable to perform all of the duties of your regular occupation.
>
> Consequently, based upon review of all documentation, we have determined that the medical evidence submitted in support of your appeal did not provide evidence that you were "totally disabled" as defined by the Plan. Therefore, STD benefits are denied effective July 28, 2005, and our file remains closed.

(Def's Ex. 1C).

Williams returned to work on December 13, 2005. (Def's Ex. 9). She filed this lawsuit on April 28, 2006, seeking payment of short term disability benefits. (Doc. # 1).

## IV. DISCUSSION

### A. Motion to Strike

Before addressing the defendant's motion for summary judgment, as an initial matter, the court quickly disposes of Greater Georgia's motion to strike certain information relied on by the plaintiff to oppose its' motion for summary judgment. *See* Doc. # 21. The defendant argues that paragraph 9 of the plaintiff's declaration should be stricken because

9

statements contained in that paragraph do not meet the requirements of FED. R. CIV. P. 56.[3] Specifically, Greater Georgia complains of Williams' statement in paragraph 9 that she "returned to Dr. DeHaven's office complaining of my problems and at that time he agreed with me that I was unable to work until my follow up visit in December of 2005." (Pl's Ex. 1 in Opp. to Summ. J.)  This statement is simply inadmissible hearsay and does not comply with FED. R. CIV. P. 56.  Accordingly, the defendant's motion to strike this portion of Williams' declaration is due to be granted.

In all other respects, the motion to strike is due to be denied.  The court is capable of sifting through the declaration and considering only those portions which are either based on the declarant's personal knowledge or are not being offered for the truth of the matter asserted.  To the extent that the declaration contains information not based on personal knowledge, the court has not considered that material in resolving the motion for summary judgment.  Accordingly, the defendant's motion to strike will be granted in part and denied in part.

### B. Denial of Short-Term Disability Benefits Claim

The civil enforcement provisions of ERISA, 29 U.S.C. § 1132(a), provide the exclusive remedy available to recover benefits due under employee benefit plans. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41 (1987).  The parties agree that Greater Georgia had

---

[3] FED. R. CIV. P. 56(e) requires that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

"discretionary authority to determine entitlement" to benefits under the Plan. *See* Def's Br. in Supp. of Mot. for Summ. J. at 13; Pl's Br. and Resp. to Def's Mot. for Summ. J. at 3. However, according to Greater Georgia, the court should apply the 'heightened' arbitrary and capricious standard of review to evaluate its decision to deny Williams' benefits. Williams asserts that the 'arbitrary and capricious' standard of review should apply in this case.

The court pretermits a lengthy discussion about the appropriate standard because, as the Eleventh Circuit aptly noted, "the distinctions between the heightened arbitrary and capricious, arbitrary and capricious, and *de novo* standards of review have become difficult to discern over time." *Williams v. Bellsouth Telecommunications, Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004). Consequently, in an effort to clarify the appropriate analytical framework, the Eleventh Circuit has delineated the appropriate approach "for use in judicially reviewing virtually *all* ERISA-plan benefit denials." *Id*. (emphasis in original).

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
> (5) If there is no conflict of interest, then end the inquiry and affirm the decision.

11

> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams*, 373 F.3d at 1137-38. *See also Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1232 (11th Cir. 2006); *Langford v. UNUM Life Ins. Co. of Am.,* 138 Fed. Appx. 162, 163-64 (11th Cir. 2005) *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993-94 (11th Cir. 2001).

Following the framework set forth in *Williams*, the court concludes that, under the *de novo* standard of review, Greater Georgia's determination that Williams was not disabled under the terms of the Plan was not 'wrong.' "Under the *de novo* standard, we have described "'[w]rong' [a]s the label used by our precedent to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's plan interpretation." *Langford*, 138 Fed. Appx. at 164. A *de novo* standard of review does not restrict the court to information available to the plan administrator at the time of its determination. Instead, the court may consider any information that is relevant to the denial of benefits. *See e.g., Moon v. Am. Home Assur. Co.*, 888 F.2d 86, 89 (11th Cir. 1989); *Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994).

Williams argues that Greater Georgia is not entitled to summary judgment because the undisputed evidence demonstrates that she was totally disabled and unable to work during the period from June 23, 2005 until December 9, 2005. *See* Pl's Br. and Resp. in Opp. to Def's Mot. for Summ. J. at 4. The defendant, on the other hand, argues that its decision to deny Williams short-term disability benefits was neither arbitrary nor capricious because the

medical evidence was insufficient to demonstrate that Williams was disabled under the terms of the Plan.

Under the terms of the Plan,

> "Totally Disabled" . . . means that you: (1) are unable, due to a disability (whether Illness or Injury), to perform all of the duties of your regular occupation, supported by objective medical evidence; (2) are under the regular care and attendance of a physician, appropriate for the condition causing the disability; and (3) are not otherwise employed for wage or profit.

(Def's Ex. 2, Westpoint Stevens Group Short Term Disability Insurance Benefits at 3).

The undisputed evidence demonstrates that Williams returned to work after hip replacement on June 13, 2005. Prior to returning to work, Williams had been seen by Dr. DeHaven on February 3, 2005, March 17, 2005, and April 21, 2005. (Def's Exs. 7 & 8). On February 3, 2005, Dr. DeHaven noted that Williams' hip was "doing very well." (Def's Ex. 7). He noted that Williams had "minimal antalgic gait" but that she was "only less than two months from surgery." (*Id*.) On March 17, 2005, Dr. DeHaven examined Williams and noted that she was "actually doing very well." (Def's Ex. 8). He noted "a little bit of an antalgic gait but not bad." (*Id*.) His treatment note candidly reflects that he agreed to keep her out of work for a couple of months "because that is the length of her disability program." (*Id*.). On April 21, 2005, Williams complained to Dr. DeHaven that she was having back pain. (*Id*.). Dr. DeHaven noted that her back pain was improving. Consequently, he prescribed "some Robaxin." (*Id*.)

Thereafter, Williams worked from June 13, 2005 until July 27, 2005. On July 29,

13

2005, she telephonically made a claim for short term disability benefits based upon osteoarthrosis of the lower left leg. It is undisputed that Williams made the request for benefits before she was seen by Dr. DeHaven. It is also undisputed that Dr. DeHaven's note that Williams was unable to return to work until December 2005 was based upon a request from Williams to his office.

When Dr. DeHaven examined Williams on August 9, 2005, Williams told him she "wobbles." Although she had a "little bit of an unsteady gait," Dr. DeHaven noted that Williams was "doing okay" and that "pain wise, she is getting a lot better." (Def's Ex. 13). On September 21, 2005, Williams complained to Dr. DeHaven that she was "having a lot of back pain, sort of along her iliac crest area." (*Id*.) Although x-rays revealed "some arthritis [it was] not all that bad." (*Id*.) In addition, her hip "look[ed] perfect." (*Id*.)

Although Dr. DeHaven completed a form that indicated Williams was not to work until December 2005, at no time did he complete a Functional Capacity form to indicate whether Williams could return to her work or perform any other work. Dr. DeHaven simply stated, with no further explanation, that Williams "will be unable to work for a period until seen for follow up in December 2005. Moreover, neither Dr. DeHaven's medical records nor his office visit notes support his conclusion that Williams was unable to work due to osteoarthrosis. There is no medical evidence in the record regarding Williams' restrictions and limitations.

Greater Georgia concluded that Williams was not disabled under the terms of the Plan

because she was not "under the regular care of a physician" when she applied for benefits. Specifically, Greater Georgia relied on the fact that although she contacted Dr DeHaven's office for a note on July 25, 2005, she was not seen by him until August 9, 2005. However, Greater Georgia did not rely on this fact alone to deny benefits. Greater Georgia also relied on the medical evidence it received from Williams and Dr. DeHaven which "did not provide any functional limitations or objective findings to support that [Williams was] unable to perform all of the duties of [her] regular occupation." (Def's Ex. 10 at 3).

To the extent that Williams argues that she is entitled to summary judgment because the defendant failed to present any reliable evidence to contradict her treating physician's opinion that she is disabled, she is entitled to no relief. *See* Pl's Br. and Resp. in Opp. to Def's Mot. for Summ. J. at 5). In *Black & Decker Disability Plan v. Nord*, the Supreme Court specifically held that in ERISA cases, "plan administrators are not obligated to accord special deference to the opinions of treating physicians." 538 U.S. 822, 825 (2003).

> Plan administrators, or course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Id*. at 834.

Greater Georgia considered the medical record, and relied on the fact that Dr. DeHaven failed to give any information on Williams' restrictions and limitations, other than the form that she was not to return to work until December 2005. Greater Georgia also relied

on Dr. DeHaven's office visit notes that Williams was doing well. Finally, Greater Georgia's internal case file notes a concern that Williams returned to work for six weeks before making a claim for short term disability benefits. Under the facts of this case, Greater Georgia's decision that Williams had not presented sufficient evidence that she was disabled was not wrong. Consequently, the court concludes that the defendant's motion for summary judgment on the plaintiff's claim that she was wrongly denied short-term disability benefits is due to be granted.

### V. CONCLUSION

Accordingly, for the reasons as stated, it is

ORDERED that, to the extent that the defendant seeks to strike the sentence "returned to Dr. DeHaven's office complaining of my problems and at that time he agreed with me that I was unable to work until my follow up visit in December of 2005" contained in paragraph 9 of the plaintiff's declaration, the motion to strike be and is hereby granted; in all other respects, the motion to strike be and is hereby DENIED. It is further

ORDERED that the defendant's motion for summary judgment (doc. # 13) be and is hereby GRANTED.

An appropriate judgment will be entered.

Done this 11th day of January, 2007.

    /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE